IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 22, 2005

## STATE OF TENNESSEE v. CELESTE HALL

**Appeal from the Circuit Court for Dickson County**
**No. CR7469     Robert E. Burch, Judge**

───────────────

**No. M2005-00715-CCA-R3-CD - Filed December 27, 2005**

───────────────

The Defendant, Celeste Hall, pled guilty to child abuse and neglect and facilitation of the aggravated sexual battery of her minor child. The Defendant received an effective three year sentence in prison. On appeal, the Defendant argues that the trial court erred in denying alternative sentencing. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Colombus Wade Bobo, Ashland City, Tennessee, for the appellant, Celeste Hall.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Senior Counsel; and Dan Alsobrooks, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

In September 2004, the Defendant was indicted on a five-count indictment charging unlawful criminal activity against her nine year old daughter. According to the statements contained in the presentence report, the Defendant and her live-in boyfriend, Alexandera Unlu, engaged in sex acts in front of the Defendant's daughter and allowed the child to have sexual contact with Unlu. The five-count indictment included charges of child abuse and neglect, aggravated sexual battery, facilitation of aggravated sexual battery, and two charges of contributing to the delinquency of a minor. The Defendant pled guilty as a Range I, standard offender to child abuse and neglect, a Class A misdemeanor, and facilitation of aggravated sexual battery, a Class C felony. Following a sentencing hearing, the trial court imposed concurrent sentences of eleven months and twenty-nine days in the workhouse and three years to be served in the Department of Correction.

According to the sentencing hearing testimony of Andy Davis, a detective with the Dickson County Sheriff's Department, Unlu touched the "private areas" of the victim in this case on several different occasions while the Defendant and Unlu were living together. This information was revealed to Detective Davis after the victim was removed from the Defendant's home and placed in foster care. The statements of the Defendant contained in the presentence report, however, reference a single incident, "sometime between Thanksgiving and Christmas of 2003," during which the Defendant and Unlu allowed the victim to participate in sexual activity with them.

Stephanie Ellis, a case manager with the Department of Children Services, testified that after the victim was placed in foster care the Dickson County Juvenile Court issued a restraining order preventing the Defendant from having any contact with the victim. However, Ms. Ellis thereafter observed the Defendant in the parking lot of the victim's school. When Ms. Ellis asked the Defendant about this incident, the Defendant denied being there. According to Ms. Ellis, on one occasion the Defendant and Unlu drove by one of the victim's foster homes and waved to the victim when she was outside the house. Ms. Ellis also testified that the Defendant had been seen driving past another one of the victim's foster homes.

Kimberly Hall, also a case manager with the Department of Children Services, stated that she was responsible for developing a "permanency plan" which would attempt to facilitate the victim's return home. However, she testified that she had only sporadic contact with the Defendant, and that she did not hear from the Defendant at all for approximately two months. Kimberly Hall attempted to contact the Defendant during this two-month time period but the Defendant's telephone was disconnected. Kimberly Hall further testified about the occurrence of another incident after the issuance of the restraining order during which the victim and her foster mother incidentally encountered the Defendant at her place of employment, a Wal-Mart store.

Kimberly Hall met with the Defendant after the Defendant gave a statement to the police about her involvement in the crimes in this case. The Defendant told Kimberly Hall "that it was [the victim's] fault, that [the victim] had pushed her to basically demonstrate" the sexual acts with Unlu. In her statement to Detective Davis, which is included in the presentence report, the Defendant made the following comments:

> Sometime between Thanksgiving and Christmas of 2003, [the victim] kept asking me about sex and the male anatomy. I kept telling her she was too young for this. She kept saying she would find out somewhere else. I discussed this with [Unlu]. We discussed showing her and [Unlu] and I both said she was too young.
>
> One night [the victim] was sleeping with [Unlu] and I because it was too cold in her room, it was still sometime between Thanksgiving and Christmas, 2003. [The victim] starting [sic] trying to feel [Unlu's] penis. I got on to her and started yelling at her and told her to go to her room. [Unlu] told me to stop yelling at her. He said let's talk about this. He told [the victim] I would explain sex to her when she was old enough. [The victim] kept on wanting to know about sex and wanted us to show

her. She asked about things she had seen on movies where women were "going down" on men. She said she would find out one way or the other. I decided to show her how to [perform oral sex] on [Unlu] and explained this is what they were doing on [sic] the movies. She asked if she could do it. I let her put her mouth on [Unlu's] penis. Her lips were on the tip of his penis. When this happened I realized it was wrong and made her stop. I told her not to ask about this again and made her sleep in her room.

The Defendant did not testify at the sentencing hearing. After hearing the testimony of the State's witnesses, the trial court made the following statements on the record in support of sentencing the Defendant to a term of confinement:

All right. Based on the proof which the state has presented; and I tend to agree with what I see that there are no enhancing factors; therefore, the Court is required to impose the minimum sentence of three years. The only issue before the Court is whether any or all of this sentence should be suspended or [any] alternative to incarceration should be considered.

The issue of the prior record of the defendant has been brought up; and the Court has looked at that; and a 1997 drug offense really has no relation to the case before the Court; and I don't give it any weight or consider it in any fashion. The Sentencing Reform Act requires that this defendant be given probation unless the state carries the burden of proof of showing that she should not have probation. The proof that is submitted here shows first of all two occasions -- well, one occasion of a violation of a No Contact Order; and one situation in which the -- it was apparent the intent was to violate a No Contact Order. Obviously she had no business being in the parking lot of the school, had no reason to be there other than to see the child. The Walmart situation, the Court does not consider a violation of the No Contact Order. The defendant, Ms. Hall, was where she was supposed to be; and they came to her. I don't consider that one. This shows a tendency of this defendant not to follow the Court's orders; and you know, basically an attitude of, well, they are my children I'm going to do what I'm going to do. That indicates to the Court that she would not be successful on probation because basically what probation is [is] following the rules of the Court.

. . .

The Department of Children Services in attempting to work out a foster care plan is -- or at least has many things in common with the Department of Probation and Paroles, Department of Corrections, putting a person on probation basically there are certain rules, certain tasks that you have to perform, things you have to do; and she's failed to work with DCS on a foster care plan. That indicates to me that she wouldn't work with a probation officer on probation. She has shown a decisive lack of

-3-

remorse in this situation mainly because she accepts no responsibility. Nothing that I have seen showed that she accepted any responsibility, blaming the child, which is quite frankly reprehensible; and the Court has noted that her statements in the pre-sentence report some of those to be untruthful, which also would substantiate denial of alternative sentencing.

**ANALYSIS**

The Defendant appeals the trial court's denial of alternative sentencing. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).[1] To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

---

[1] We note that the legislature has recently amended several provisions of the Criminal Sentencing Reform Act of 1989, said changes becoming effective June 7, 2005. However, the Defendant's crimes in this case, as well as her sentencing, predate the effective date of these amendments. Therefore, this case is not affected by the 2005 amendments, and the statutes cited in this opinion are those that were in effect at the time the instant crimes were committed.

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). See also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" which would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § 40-35-103(5).

A defendant is eligible for probation if the actual sentence imposed upon the defendant is eight years or less and the offense for which the defendant is sentenced is not specifically excluded by statute. See Tenn. Code Ann. § 40-35-303(a). The trial court shall automatically consider probation as a sentencing alternative for eligible defendants; however, the defendant bears the burden of proving his or her suitability for probation. See id. § 40-35-303(b). No criminal defendant is automatically entitled to probation as a matter of law. See id. § 40-35-303(b), Sentencing Commission Comments; State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See State v. Souder, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002).

In determining whether to grant probation, the court must consider the nature and circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See id. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a).

We note that the record before this court does not contain a transcript of the guilty plea. In order to conduct an effective appellate review of sentencing, a transcript of the guilty plea hearing is generally necessary. See State v. Keen, 996 S.W. 2d 842, 844 (Tenn. Crim. App. 1999). The transcript of the guilty plea is ordinarily necessary in order for this court to ascertain the facts and circumstances surrounding the offense. The guilty plea hearing is the equivalent of a trial. Id. at 843. In the absence of a transcript of a guilty plea, this court must generally conclude that the sentence imposed by the trial court was correct. Id. at 844. Regardless, the Defendant has not demonstrated that she is entitled to relief.

The presentence report reflects that at the time of sentencing the Defendant was forty-two years old. Her only prior conviction was for the misdemeanor offense of casual exchange of a controlled substance, which occurred some seven years prior to sentencing for the offenses herein. She has a ninth grade education and was employed at a Wal-Mart store. She is unmarried and her two children are in foster care.

The Defendant argues that she should have been granted alternative sentencing. In support of her argument, the Defendant simply disputes the trial court's findings that she attempted to make contact with the victim or that she failed to work with the Department of Children Services on a foster care plan. She also contends that the court's findings that she lacked remorse and gave untruthful statements are without basis because she elected not to give any statements to the officer preparing the presentence report.

We find the Defendant's argument to be unpersuasive. The trial court followed the statutory guidelines when imposing the minimum sentence in this case and the presumption of correctness applies. The record supports the trial court's findings of fact. In denying probation, the trial court was specifically concerned about the Defendant's potential for rehabilitation and her lack of responsibility and remorse. Contrary to the Defendant's argument on appeal, the record reflects that she ignored the restraining order placed upon her. The Defendant, on at least two separate occasions, was seen in the vicinity of the victim, and there was no evidence to show her presence at these locations was for any reason other than to see the victim. Further, the Defendant was untruthful to Ms. Ellis regarding her presence at the victim's school. As the trial court noted, this evidence indicates that the Defendant would likely not obey the terms and conditions of probation.

Although the Defendant declined to provide a statement for the presentence report or testify at the hearing, other evidence in the record demonstrates that the Defendant did not accept responsibility or show remorse for her actions. A defendant's failure to accept responsibility and attempt to divert blame on others are relevant factors in the consideration of rehabilitation potential. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994). The Defendant's "reprehensible" suggestions that the victim contributed to the Defendant's criminal actions reflect poorly upon the Defendant's potential for rehabilitation. The evidence also supports a finding that confinement is necessary in this case in order to avoid depreciating the seriousness of the crimes. Tenn. Code Ann. § 40-35-103(1)(B). Furthermore, in denying probation the trial court appropriately considered Defendant's complete lack of remorse for her actions. See State v. Brian Goodrich, No. M2002-

03017-CCA-R3-CD, 2004 WL 367719, at *3 (Tenn. Crim. App., Nashville, Feb. 27, 2004); <u>State v. Theresa C. Runion</u>, No. E2002-02759-CCA-R3-CD, 2003 WL 22532499, at *2 (Tenn. Crim. App., Knoxville, Nov. 7, 2003).

### CONCLUSION

For the reasons stated above, we conclude that the trial court did not err in denying alternative sentencing for the Defendant.  The judgment of the trial court is affirmed.


_____
DAVID H. WELLES, JUDGE